IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-24 Erie |
| | ) | |
| GREGORY A. DOYLE | ) | |

## SENTENCING MEMORANDUM
## OF THE UNITED STATES

Gregory Doyle possessed over fifty videos of child sexual abuse material, some of it depicting young children. He should receive a guideline range sentence. His obvious and depraved sexual interest in young children makes him a danger to the community.

## Factual Background

On May 18, 2016, the Pennsylvania State Police (PSP) identified a computer which was sharing child sexual abuse material on the BitTorrent network. PSP was able to download multiple files depicting the sexual exploitation of minors directly from the identified computer. Among them was a file titled "lpear-001b-093.jpg" which is a still image that depicted a nude pre-teen girl who is squatting and exposing her vaginal area. Two other files, "lpear-001b-036.jpg" and "lpear-001b-064.jpg", downloaded by PSP from the identified computer, depicted the same pre-teen girl described in the image above. File "lpear-001b-036.jpg" was a still image depicting

the pre-teen girl topless and in a modeling pose.  File "lpear-001b-064.jpg" was a still image depicting the pre-teen girl completely nude and in a modeling pose.

Also on May 18, 2016, PSP was able to download additional files directly from the identified computer.  A file titled "ps-002a-097.jpg" depicted another pre-teen girl topless, wearing a belly chain, and kneeling on both knees in a modeling pose.  File "ps-002a-096.jpg" depicted what appears to be the same pre-teen girl, wearing the same belly chain, kneeling with the image focus on her vaginal area which is mostly obscured by the belly chain.

On June 1, 2016, PSP obtained an administrative subpoena issued by the Crawford County, Pennsylvania District Attorney's Office requesting subscriber information from Verizon, an Internet Service Provider who was assigned the identified IP address on May 18, 2016.  On June 13, 2016, Verizon provided subscriber information for that IP address. On May 18, 2016, the date PSP downloaded the above child exploitation files, the subscriber to the IP address was Greg Doyle living at 37 East Division Street, North East, Pennsylvania 16428.

Based upon this information, PSP and the FBI executed a search warrant at Doyle's residence on July 27, 2016.  The search resulted in the seizure of Doyle's digital devices which have been determined to contain child sexual abuse material. The forensic examination of Doyle's computer revealed the presence of over 50 movies of child sexual abuse material along with ample evidence of his use of BitTorrent to both share and download child sexual abuse material, much of which depicted minors under the age of 12.

Doyle was interviewed during the execution of the search warrant at his residence and readily confessed to downloading child sexual abuse material using BitTorrent.

## **Argument**

### A. Legal Context

Numerous courts have emphatically expressed the wretched consequences of child sexual abuse material. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child [sexual abuse material.] These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child sexual abuse material by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child [sexual abuse material] permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child [sexual abuse material], because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it

> inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child [sexual abuse material] and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *aff'd* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child sexual abuse material defendant. In denying the defendant's challenge to the legitimacy of the child sexual abuse material guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child [sexual abuse material], we are living in a country that is losing its soul.
>
> Child [sexual abuse material] is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child [sexual abuse material] undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d

4

207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237). Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose." *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C. Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Doyle is 63 to 78 months of incarceration to be followed by a term of supervised release of not less than five years to life.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 63-to-78-month guideline range is justified, reasonable, and appropriate in this case. Doyle is not seeking a downward departure based on any specific provision of the Sentencing Guidelines. Rather, Doyle seeks an enormous downward variance to probation.

Doyle takes issue with the imposition of two offense levels for his use of a computer to commit the crimes. It is well established that the use of a computer enhancement does not constitute impermissible double counting. *United States v. Ziska*, 602 F. App'x 284, 289 (10th Cir. 2015). Doyle seeks a downward variance because everyone uses a computer now to commit child pornography offenses. There is significant irony to Doyle's claim. The penalty was enacted to curb the explosion of child pornography on the Internet. The fact that Internet pornography is so pernicious is not a basis to reduce penalties. Indeed, there is no other area of criminal law where, when severe crime becomes more common, the penalties are reduced. This argument also ignores the purpose of the enhancement. Due to the wide dissemination and instantaneous transmission, computer-assisted trafficking of child pornography is extremely difficult for law enforcement officials to stop. *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at 3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing *a distinct harm* beyond the mere possession of child pornography. *United States v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).

Doyle also complains about the number of images enhancement. He had over fifty movies depicting child sexual abuse. There was ample evidence of the use of BitTorrent to obtain the material. Doyle was actively engaged in seeking out and keeping material depicting child sexual abuse. He did not accidentally happen upon it or get duped into receiving it. He wanted the material, and he went out and

obtained it.  He then kept it.  These videos would immediately repulse anyone not sexually interested in kids.  How many more videos would be needed to show Doyle's keen interest in sex with minors.

The Court should also be mindful that the forensic examination conducted on Doyle's devices merely provides investigators largely with evidence from a sliver of time that may not reflect the full breadth of Doyle' interest.  Doyle's collection could have changed over time such that the forensic exam did not fully reflect the full scope of Doyle's involvement.

### E.  Section 3553 Factors

When sentencing a defendant, the Court's reasoning must be guided by all the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background or the impact of the sentence on the defendant.  *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).  In pertinent part, these factors include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)   the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
> (3)   the kinds of sentences available;
> (4)   the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
> (5)   any pertinent policy statement-
> (A) issued by the Sentencing Commission ...
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7

(7)   the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate way to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 63 to 78 month guideline range.

### 1. Nature and Circumstances of the Offense

Doyle was in possession of over fifty videos of child sexual abuse material, which he obtained from the Internet using his computer. His collection of depravity was rife with children under the age of twelve being sexually exploited. These images and movies are so repulsive that only someone with a profound interest in them would hold them close and continue obtaining them. When interviewed, Doyle admitted his involvement in the exploitation of children.

### 2. History and Characteristics of the Defendant

Doyle grew up in a home free from abuse where he was cared for and his needs were met. (PSIR ¶ 37-38). He reported that his only medical issues are diabetes and diabetic myopia. (PSIR ¶ 43). Doyle is a high school graduate with no history of mental health or substance abuse problems. (PSIR ¶ 44-46). He also

attended some college. (PSIR ¶ 47). He has also been employed by the same company since 2001 and has a good job (PSIR ¶ 49). Doyle has had a far better life than many who come to federal court for sentencing. There is nothing mitigating in Doyle's background which would justify a downward variance.

Certainly the BOP can handle Doyle's relatively standard medical issues. Doyle also points to his performance on pretrial release. He makes much of merely doing what he is supposed to do. Complying with release conditions and following the law as is required of everyone is not exceptional behavior deserving of a probationary sentence here. *United States v. Little*, 485 F.3d 1210, 1210-11 (8th Cir. 2007); *United States v. Ramos*, 2016 WL 9021831 (D. N.M., December 30, 2016).

Doyle also seeks a probationary sentence based in part on the fact that his conduct here is "dated." His audacity is remarkable. Doyle moved to continue his case 39 times. Now he has the gall after delaying the proceedings for more than five years to say that the charges are old. The prosecution would have been well within its authority to deny the third acceptance point to Doyle for his dilatory tactics. The Court should not allow Doyle to have his cake and eat it too.

> 3. **The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime, and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* The Supreme Court has long recognized that sexual abuse has devastating and long-lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment. *Kennedy v. Louisiana,* 554 U.S. 407, 447-70 (2008).

Doyle possessed child sexual abuse material for at least two years with no sign of quitting when he was caught. A guideline sentence will reflect the gravity of such conduct.

### 4. Impact on the victims

Congress has plainly indicated that "[e]very instance of viewing images of child sexual abuse material represents a ...repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Sexual abuse material Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)). The words of Congress and many courts are echoes of the victims themselves.

Plainly, the negative consequences that Doyle will experience from his conviction pale in comparison to the everlasting and devastating impact on these most innocent victims. The consequences for Doyle were entirely foreseeable and of

his own making. The victims continue to suffer enormously when Doyle and his ilk entertain themselves with pictures of these young victims being exploited.

Victims depicted in child sexual abuse material consistently indicate that the continuing dissemination and collection of their abuse imagery is much more disturbing to them than the underlying abuse ever was. Their point is simple. The abuse ended at some point. The viewing and collection of the material memorializing their abuse never ends. Its continued consumption by individuals like Doyle is a constant and unceasing reminder that they can never be fully free of those wishing to receive gratification from their victimization. Thus, the fact that Doyle may not be a hands-on offender is beside the point. He was not charged with hands on offenses and his eager participation in the culture of child devastation has a life-long suffocating and devastating impact on the victims.

### 5. The Need for the Sentence Imposed to Afford Adequate Deterrence

#### a. General Deterrence is an Important Factor in Sentencing

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child sexual abuse material] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to

conclude that it will decrease the production of child sexual abuse material if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff,* 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child sexual abuse material and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline,* 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child sexual abuse material context[.]" *Id.* (citing *United States v. Camiscione,* 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child sexual abuse material will pay a very heavy price. The goal of deterrence is realized if even one person is deterred. A sentence within the applicable guideline range will accomplish this goal.

### b. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider. *See Irey,* 612 F.3d at 1210. The Court should impose a guideline range jail sentence and a considerable term of supervised release to ensure that the danger to the community posed by Doyle is minimized as much as possible.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

In *Goff, supra*, the district court sentenced a child sexual abuse material defendant to four months imprisonment despite an applicable guideline range of 37 to 46 months. The Third Circuit vacated the sentence and remanded for resentencing, holding that such a lenient sentence was unreasonable. *Goff*, 501 F.3d at 262. The court opined that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of § 3553 factors. Specifically, the district court did not adequately consider the nature and circumstances of the offense, the need to promote respect for the law, the avoidance of unwarranted sentencing disparities and affording adequate deterrence. *Id.* at 258. Goff downplayed the seriousness of the offense by implying that he committed a victimless crime driven by his curiosity. The Third Circuit emphatically rejected these claims. *Id.* at 258-59.

Goff also argued that he was entitled to a variance because he had never acted out in a sexual way with children. The Third Circuit vehemently disagreed with this argument, reasoning:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's sexual abuse material crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.* The Third Circuit was also thoroughly unpersuaded that Goff's supposedly exemplary life and charitable activities justified such a low sentence. The sentencing court's reliance on Goff's lack of a criminal history was also criticized because many child sexual abuse material offenders are first time offenders. *Id.* at 260-61. The Third Circuit also noted disapprovingly that the district court had failed entirely to consider deterrence when arriving at such a drastically low sentence for Goff. *Id.*

Similarly, the defendant in *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009), was sentenced to five years of probation and a $10,000 fine despite his guideline range of 30 to 37 months. The government appealed the sentence arguing that it was substantively unreasonable. The Third Circuit agreed and vacated the excessively lenient sentence. *Id.* at 221. Lychock argued that his sentence should have been affirmed because of his age (37), acceptance of responsibility and lack of criminal record. The Third Circuit was not convinced reasoning that none of these factors justified such a drastic deviation from the guideline range. *Id.*

The Third Circuit has also overturned, as excessively lenient and thus substantively unreasonable, a sentence of five years of probation to begin with six months home confinement, along with a $2,500 fine, for a defendant with child sexual abuse material in *United States v. Hayes*, 383 F. App'x. 204 (3d Cir. 2010). Hayes' guideline range was 51 to 63 months. The sentencing court focused on Hayes' lack of a criminal history and supposed low risk of reoffending. His post arrest psychological treatment and family support were also significant factors in

14

the far below guideline sentence. The district court also focused on the fact that Hayes had not actually sexually assaulted a child. *Id.* at 205-06. The Third Circuit found that none of these reasons justified such an excessively lenient sentence. *Id.* at 208. As a result, the Third Circuit vacated the sentence as substantively unreasonable, and the case was remanded for resentencing. *Id.*

### F. Conclusion

Doyle possessed over fifty videos of child sexual abuse material. The costs of his decision to possess child sexual abuse material pale in comparison to the horrible toll suffered by the child victims whose abuse captivated Doyle. He deserves a sentence within his applicable guideline range.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney


*s/Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013